IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

VIRGINIA BROCK as Administratrix
of the Estate of CYNTHIA RENEE
BROCK (Deceased)                                                    PLAINTIFF


v.                          Case No. 1:17-cv-1008


MIKE MCGOUGH, *et al.*                                          DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment. (ECF No. 25). Plaintiff Virginia Brock filed a response. (ECF No. 30). Defendants filed a reply. (ECF No. 32). The parties filed supplemental briefs. (ECF Nos. 38, 41). The Court finds the matter ripe for consideration.

## I. BACKGROUND

On January 23, 2014, Plaintiff's daughter, Cynthia Brock ("Ms. Brock"), was sentenced to ten years' imprisonment in the Arkansas Department of Corrections ("ADC"). Shortly thereafter, Brian West,[1] a nurse at the Union County Detention Center ("UCDC"), was notified that Ms. Brock was going to be booked into the UCDC while awaiting transport to the ADC. West was instructed that Ms. Brock had certain medical conditions and that he should speak with her.

West met with Ms. Brock and noticed that she was holding a metered dose inhaler with an attached spacer.[2] Ms. Brock informed West that she was diabetic, required regular insulin

---

[1] West is not a defendant to this action.

[2] A spacer is a device frequently used along with a metered dose inhaler to treat asthma attacks. 1 David A. Cramer et al., *The Gale Encyclopedia of Medicine* 546 (5th ed. 2015).

injections, had asthma, and used a BiPAP machine and oxygen concentrator while sleeping.[3] West informed her that he could make arrangements to accommodate her conditions and, after being told that her family had her medicine and equipment, asked that they bring everything to him. Ms. Brock was assigned to cell N-3 in the UCDC's nursing station, to be monitored due to her health issues.

Approximately half an hour later, West met with Plaintiff and Ms. Brock's attorney. Plaintiff told West that Ms. Brock should be immediately taken to the hospital if she began experiencing breathing issues. (ECF No. 30-2, pp. 20-21). Plaintiff then gave West the breathing apparatuses and medications used by Ms. Brock to treat her conditions.

Later that day, West filled out an inmate medical form, listing Ms. Brock's medications. West then completed a Medication Administration Record and asked Ms. Brock to review her list of medications and the times she would receive them. She did so, indicating her agreement. She also informed West of the frequency and amount of her insulin use and confirmed that the nebulizer in her possession was both battery and electrically powered.[4] West issued Ms. Brock an Advair diskus inhaler to keep with her in her cell. West also gave her an unused sharps container and a glucometer to monitor her blood sugar.

Later that evening, West ran an extension cord into Ms. Brock's cell to power her nebulizer and BiPAP machine. West then set up Ms. Brock's BiPAP and set the flow rate on the oxygen concentrator to her requested setting. West informed Ms. Brock that her spare medications would

---

[3] A BiPAP is a type of ventilator machine used to treat sleep apnea. 7 Richard Robinson & Rebecca J. Frey, *The Gale Encyclopedia of Medicine* 4666-67 (5th ed. 2015). An oxygen concentrator is an electric oxygen-delivery system that "extracts . . . air from the room, separates the oxygen, and delivers it to the patient via a nasal cannula." 6 Maggie Boleyn et al., *The Gale Encyclopedia of Medicine* 3776 (5th ed. 2015).

[4] A nebulizer is "[a] device for converting liquid asthma medication into a fine mist that can be inhaled directly into the lungs through a mouthpiece or facemask." 1 David A. Cramer et al., *The Gale Encyclopedia of Medicine* 548 (5th ed. 2015).

be kept in a Ziploc bag with her name written on it, left in plain view on the counter in the nursing station.  West also told Ms. Brock to pound on her cell door if she needed anything.

On January 24, 2014, at approximately 6:00 P.M., West met with Ms. Brock again.  (ECF No. 26-9, p. 4).  West asked how she was doing, and she told him that she was doing well.  They reviewed Ms. Brock's medical history and West asked if she had a history of heart attack, stroke, or seizures, to which she answered negatively.  West then confirmed that Ms. Brock still had her nebulizer, BiPAP machine, glucometer, and sharps container.  West had no subsequent contact with Ms. Brock after this exchange.

On the evening of January 24, 2014, Separate Defendants Robert McVay and Brandon Briggs arrived at the UCDC for their night shift as guards.  Separate Defendants McVay and Briggs, along with one other unidentified guard who is not a party to this suit, were the only guards on duty at the UCDC that night.  At approximately 9:42 P.M., Separate Defendant McVay met with Ms. Brock and provided her medication for the night.  (ECF No. 26-9, pp. 7-8).  During this exchange, he asked her if she was okay, and she indicated that she was.  (ECF No. 30-4, pp. 23-25).  At approximately 10:43 P.M., records show that Separate Defendant McVay conducted a visual check of Ms. Brock's cell.[5]  (ECF No. 26-9, p. 8).  At approximately 11:24 P.M., Separate Defendant Briggs conducted a visual check of Ms. Brock's cell.  (ECF No. 26-9, pp. 8-9).  During this check, he spoke with her and she indicated that she was fine and did not need anything.  (ECF No. 26-9, p. 2).

On January 25, 2014, at approximately 12:03 A.M., Separate Defendants McVay and Briggs heard a loud noise coming from an unknown location in the UCDC.  They ran from the

---

[5] Pursuant to a UCDC policy, guards perform a visual check of the nursing station cells roughly every half-hour to hour and confirm that the inmates are not experiencing medical issues.  (ECF No. 30-4, pp. 22, 25).  After performing the check, the guard scans a "wand" at each cell door to electronically log the check.

booking station to the hallway in front of the general housing O-Pod and, after determining that the noise was not coming from that location, they ran to the nursing station. There, they found that Ms. Brock was noticeably having difficulty breathing. She told them that she thought her throat was closing. She had apparently been using her nebulizer for a breathing treatment, as the mask was emitting vapor. (ECF No. 26-9, p. 1).

Separate Defendant Briggs immediately radioed for dispatch to call an ambulance. At approximately 12:05 A.M., the ambulance was dispatched. Separate Defendant McVay went to gather the necessary paperwork on Ms. Brock for the hospital while Separate Defendant Briggs stayed with her, held the nebulizer to her mouth so she could use it, and attempted to keep her calm. (ECF No. 41-5, pp. 24-25). An unspecified amount of time later, Separate Defendant Briggs radioed Separate Defendant McVay and requested his help, and Separate Defendant McVay ran back to the nursing station, where he found Ms. Brock in a panicked state. Separate Defendants Briggs and McVay attempted to calm Ms. Brock down and instructed her to take deep breaths.

At approximately 12:11 A.M., the officers were notified that the ambulance had arrived, and Separate Defendant Briggs went to meet the EMTs and escort them to Ms. Brock's cell. During this time, Separate Defendant McVay moved all cords and machines out of the way so the EMTs could access the cell. The EMTs arrived at the cell and began to load Ms. Brock onto the stretcher. At this time, Ms. Brock was still breathing and the EMTs stated that she had a pulse.

The EMTs placed Ms. Brock in the ambulance and, after securing her, found that she had no pulse. At approximately 12:21 A.M., the EMTs determined that Ms. Brock had poor venous access, so they intubated her, provided medication, and performed CPR until their arrival at the emergency room. At approximately 12:47 A.M., the ambulance arrived at the Medical Center of

South Arkansas. At approximately 12:55 A.M., Ms. Brock was pronounced dead by emergency room staff.

Separate Defendant Mike McGough, the Union County Sheriff at the time, ordered Sergeant Randall Gilbert[6] of the Union County Sheriff Department's Criminal Investigation Division to investigate Ms. Brock's death. As part of the investigation, Sergeant Gilbert retrieved Ms. Brock's medical equipment from her cell. He noted that the power switch on Ms. Brock's nebulizer was set to "on," but the machine was not running at the time. Sergeant Gilbert took Ms. Brock's nebulizer, portable oxygen system, and BiPAP to be tested by a medical equipment company to ensure that they had not failed. After testing, all equipment was determined to be in working condition. (ECF No. 26-9, p. 7). On March 10, 2014, the Arkansas State Crime Laboratory determined that Ms. Brock died of natural causes, specifically of bronchial asthma. (ECF No. 26-14).

On October 3, 2017, Plaintiff filed this suit pursuant to 42 U.S.C. § 1983, asserting claims against Defendants in both their individual and official capacities. Specifically, Plaintiff asserts that Defendants' deliberate indifference violated Ms. Brock's rights under the United States Constitution, the Arkansas Civil Rights Act ("ACRA"), and the Americans With Disabilities Act ("ADA"). Plaintiff also asserts a failure-to-train claim and a state law negligence claim.

On May 16, 2018, Defendants filed the instant motion, contending that there are no genuine disputes of material fact and that they are entitled to summary judgment on all of Plaintiff's claims. Plaintiff opposes the motion. On August 9, 2018, the Court directed the parties to file supplemental briefs addressing the propriety of summary judgment on Plaintiff's ADA claims, which had not been discussed in the parties' briefing of the instant motion. On September 9, 2018, Defendants

---

[6] Sergeant Gilbert is not a defendant to this action.

filed their supplemental brief.  (ECF No. 38).  On September 15, 2018, Plaintiff filed her supplemental brief.  (ECF No. 41).

## II. STANDARD

The standard for summary judgment is well established.  When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995).  This is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A fact is material only when its resolution affects the outcome of the case.  *Id.* at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id.* at 252.

In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party.  *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial.  *Krenik*, 47 F.3d at 957.  However, a party opposing a properly supported summary judgment motion "may not rest upon mere allegations or denials . . . but must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 256.

# III. DISCUSSION

As an initial matter, the Court must first address the parties' statements of facts. Defendants argue that Plaintiff has failed to specifically controvert their statement of undisputed facts, and accordingly, the Court should treat their statement of facts as admitted.

Federal Rule of Civil Procedure 56(e) states that a court may deem undisputed a party's asserted fact if it is not properly controverted by the other party pursuant to Rule 56(c). Similarly, Local Rule 56.1(c) states that all material facts asserted in the moving party's statement of facts shall be deemed admitted if they are not controverted by the nonmoving party's own statement of facts. Federal Rule of Civil Procedure 56(c)(1) provides that a party asserting a genuine dispute of material fact must support the assertion by either citing to materials in the record or by showing that the movant's cited materials do not establish the absence or presence of a genuine dispute.

In response to Defendants' statement of undisputed facts, Plaintiff filed a statement of disputed facts containing seven numbered statements of fact. None of Plaintiff's statements of facts cite to materials in the record or show that Defendants' cited materials do not establish the absence of a genuine dispute. The Court also notes that several of Plaintiff's statements of disputed facts are legal conclusions, which are improperly asserted in a statement of facts. The Court finds that Plaintiff has failed to controvert Defendants' statement of undisputed facts pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1. Accordingly, all facts asserted in Defendants' statement of facts are deemed admitted for summary judgment purposes. *See Chaffin v. City of Fort Smith*, No. 2:05-cv-2061 JLH, 2005 WL 3805977, at *1 (W.D. Ark. Oct. 19, 2005). With this issue resolved, the Court now turns to Plaintiff's claims.

A federal cause of action exists for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. §

1983. To state a claim under section 1983, Plaintiff must allege that Defendants acted under color of state law and that they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under section 1983. *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

In her amended complaint, Plaintiff states that she institutes this lawsuit pursuant to section 1983. Specifically, Plaintiff claims that Defendants' deliberate indifference to Ms. Brock's medical condition violated her rights under the Fourteenth Amendment, the Arkansas Civil Rights Act, and the Americans With Disabilities Act. Plaintiff also claims that Defendants failed to properly train guards at the UCDC to attend to inmates with medical conditions and that Defendants negligently failed to evaluate Ms. Brock's medical condition and ultimately failed to prevent Ms. Brock's death.

The Court will first address Plaintiff's official capacity claims. Second, the Court will take up Plaintiff's deliberate indifference claim. Third, the Court will address Plaintiff's ADA claim. Fourth, the Court will address Plaintiff's failure to train claim. Fifth, the Court will take up Plaintiff's state law claims.

**A. Official Capacity Claims**

Plaintiff asserts all claims in this matter against Defendants in both their individual and official capacities. Defendants argue that they are entitled to summary judgment on Plaintiff's official capacity claims.

A defendant may be sued pursuant to 42 U.S.C. § 1983 in either his individual or official capacity, or both. *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998). Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v.*

*Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Accordingly, Plaintiff's official capacity claims are treated as claims against Union County, Arkansas. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Union County's liability under section 1983, Plaintiff "must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Defendants argue that Plaintiff has failed to provide evidence of any official custom, policy, or practice of Union County that caused the alleged violation of Ms. Brock's constitutional rights. Defendants argue that, to the contrary, the UCDC had a practice and policy that medical care is to be provided to all inmates and that, in the event of an emergency medical situation, inmates are to be immediately transported to the hospital. Defendants argue further that the UCDC has no policy, practice, or custom directing staff to deny medical care to inmates.

Plaintiff does not appear to directly respond to Defendants' arguments regarding her official capacity claims. At most, Plaintiff argues that Defendants utilize a practice of understaffing the UCDC at night, despite knowing that the two guards on patrol would be unable to adequately monitor the inmates, specifically for medical purposes.

Upon consideration, the Court agrees with Defendants. Although Plaintiff alleges that Defendants utilize a practice of understaffing the UCDC at night, thereby depriving the inmates of medical monitoring and care, she does not provide any evidence that Defendants utilize a practice of understaffing the UCDC for the purpose of depriving the inmates of adequate medical care or monitoring. Moreover, the evidence in the record appears to contradict this argument. As Defendants point out, West, the nurse employed at the UCDC during the events at issue, testified in his deposition that the UCDC has a policy of providing medical care to its inmates, and that, in the event that an emergency medical situation occurs when the nurse is not present, staff calls for an ambulance to transport the inmate to the hospital. (ECF No. 30-3, pp. 54-55).

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that she has not shown that Defendants committed a constitutional violation pursuant to an official custom, policy, or practice of Union County, Arkansas. *Moyle v. Anderson*, 571 F.3d at 817. Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's official capacity claims.

### B. Deliberate Indifference

Plaintiff asserts against all Defendants a claim of deliberate indifference pursuant to 42 U.S.C. § 1983. Defendants argue that they are entitled to summary judgment on this claim.

As a preliminary matter, the Court notes that the parties disagree on the standard to be used in determining Plaintiff's deliberate indifference claim. Plaintiff argues that the Court should use the standard articulated by the United States Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), under which a defendant may be found liable on a Fourteenth Amendment deliberate indifference claim based on obviousness or constructive notice. Defendants argue that Ms. Brock was not a pre-trial detainee at the time of the incident and, thus, Plaintiff's deliberate indifference

claim should be analyzed using the general Eighth Amendment standard for deliberate indifference, with liability attaching only if a defendant both knew of and deliberately disregarded the plaintiff's medical needs.

The Court agrees with Defendants. Claims of deliberate indifference arise under the Fourteenth Amendment when an inmate is a pre-trial detainee. *Thornton v. U.S. Dep't of Justice*, 93 F. Supp. 2d 1057, 1064 (D. Minn. 2000) (citing *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 957 (8th Cir. 1994)). Conversely, deliberate indifference claims arise under the Eighth Amendment when the inmate has been convicted and is serving a sentence. *Id.*

In this case, the undisputed facts indicate that at all times relevant to this suit, Ms. Brock had been convicted and was being detained at the UCDC, awaiting transport to the ADC. Plaintiff's deliberate indifference claims arise under the Eighth Amendment rather than the Fourteenth Amendment because Ms. Brock was not a pre-trial detainee. *Id.* Accordingly, Plaintiff's deliberate indifference claims will be evaluated under the Eighth Amendment deliberate indifference standard, as articulated below. *Id.*

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on her Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to Ms. Brock's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate-indifference standard includes "both an objective and a subjective component: '[Plaintiff] must demonstrate (1) that [Ms. Brock] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

Defendants do not dispute that Ms. Brock had an objectively serious medical need.

Accordingly, the only question before the Court is whether Defendants were aware of and deliberately disregarded her medical needs. To satisfy the subjective prong of deliberate indifference, a plaintiff "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citation omitted). A plaintiff "must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.*

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnotes omitted). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005).

Upon consideration, the Court finds that Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim. The evidence before the Court fails to show that any Defendant in this case was aware of the specific nature of Ms. Brock's medical conditions, other than Separate Defendants McVay and Briggs' general knowledge that she had some sort of medical condition based on her assignment to a cell in the nursing station and her possession of breathing apparatuses. Although Plaintiff argues that West was aware of the nature of Ms. Brock's medical conditions, West is not a party to this action and there is no evidence in the record demonstrating that West conveyed information about Ms. Brock's conditions to any Defendant.

Even assuming *arguendo* that Separate Defendants McVay and Briggs had sufficient

knowledge of Ms. Brock's medical needs, there is no evidence in the record that they were deliberately indifferent to those needs. Plaintiff has provided no evidence demonstrating that any Defendant intentionally refused to provide medical care to Ms. Brock. To the contrary, the evidence before the Court indicates that Defendants provided Ms. Brock with all the medication and equipment that her family provided for her conditions. West set up Ms. Brock's machines and breathing apparatuses and Defendants let her keep them in her cell for use if necessary. On the night of the incident, Separate Defendants McVay and Briggs checked on Ms. Brock at least once an hour, and she told them on multiple occasions that she was fine and did not need anything. As soon as Separate Defendants McVay and Briggs discovered that Ms. Brock was experiencing breathing issues, they immediately called for an ambulance, which arrived five minutes later. The evidence shows that Separate Defendants McVay and Briggs were attempting to get assistance for Ms. Brock's medical issues; they were not ignoring the problem. Perhaps the sequence of events is indicative of some degree of negligence, but it does not rise to the level of deliberate indifference. *Popoalii*, 512 F.3d at 499.

Plaintiff also appears to argue that Defendants exhibited deliberate indifference by failing to provide Ms. Brock with adequate medical equipment. She argues that after Ms. Brock's death, Sergeant Gilbert's inspection of her cell revealed that her nebulizer was not running at that time, despite being set to "on." Plaintiff argues that this is evidence of Defendants' deliberate indifference because they had an obligation to give Ms. Brock working medical devices, and their failure to do so caused her medical problem and subsequent death. Defendants argue in response that the nebulizer had been unplugged to give the EMTs access to her cell, which explains why the machine was not still running hours later, when Sergeant Gilbert inspected the cell.

The evidence before the Court shows that West and Ms. Brock set up her medical

equipment on January 23, 2014, and that West verified the next day that she still had all of her equipment. When Separate Defendants McVay and Briggs found Ms. Brock having breathing difficulties, they noticed that she was apparently utilizing her nebulizer, because vapor was emitting from the mouth piece. (ECF No. 26-9, p. 1). When Sergeant Gilbert took the machines from Ms. Brock's cell after her death, he found that the nebulizer's power switch was set to "on," but that it was not currently working. However, upon inspection by the medical equipment company, the nebulizer began working as soon as it was plugged in and operated as intended. (ECF No. 26-9, p. 7). There is no evidence to show that any Defendant intentionally refused to provide working medical equipment to Ms. Brock, or even that her machines were not working at the time she began experiencing breathing issues. Evidence related to her nebulizer is, at most, evidence of negligence, which does not constitute deliberate indifference. *Popoalii*, 512 F.3d at 499.

To the extent that Plaintiff argues that Defendants were deliberately indifferent because they intentionally delayed Ms. Brock's access to medical care, the Court finds that argument unpersuasive. The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the summary judgment record. *Laughlin*, 430 F.3d at 929. Plaintiff has produced no such evidence.[7] Plaintiff has also not pointed to any evidence of intentional delay. *Fourte v. Faulkner Cnty., Ark.*, 746 F.3d 384, 390 (8th Cir. 2014). As previously discussed, the evidence before the Court shows that Defendants

---

[7] Plaintiff testified in her deposition that she believed that Defendants were deliberately indifferent to Ms. Brock's medical needs by placing her in the UCDC after she was sentenced instead of immediately taking her to the hospital. (ECF No. 30-2, pp. 23-25). However, Plaintiff does not assert this argument in opposing the instant motion. Even assuming *arguendo* that she had, the Court finds that it would not demonstrate deliberate indifference. There is no evidence in the record showing that anyone ever requested that Ms. Brock be taken to the hospital rather than be incarcerated at the UCDC. There is also no evidence before the Court demonstrating that a different outcome would have occurred if Ms. Brock had been taken to the hospital instead of the UCDC. Moreover, Plaintiff's retrospective "difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (alteration in original).

provided Ms. Brock with her medical devices and, from her initial incarceration on January 23, 2014, until roughly midnight on January 25, 2014, she experienced no issues. On multiple occasions during her incarceration at the UCDC, Ms. Brock told West and Separate Defendants McVay and Briggs that she was feeling fine and did not need anything. As soon as Separate Defendants McVay and Briggs discovered that Ms. Brock was suddenly experiencing breathing issues, they immediately called for an ambulance. There is simply no evidence in the record to show that any Defendant intentionally delayed Ms. Brock's access to medical treatment.

There can be no doubt that Ms. Brock's death was a tragedy. However, there is no evidence in the record to support a deliberate indifference claim against Defendants. Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim.

### C. ADA Claim

Plaintiff asserts an ADA claim against Defendants. Defendants argue that they are entitled to summary judgment on this claim.

Defendants concede that the ADA applies to state and local governments, including detention facilities. Defendants further state that the United States District Court for the Eastern District of Arkansas held in 1997 that disabled prisoners may challenge inadequate medical care if a prison official fails to provide them with necessary medical supplies or devices. However, Defendants argue that Plaintiff's ADA claim fails on the merits because she cannot demonstrate that they violated the ADA. Plaintiff argues in response that issues of fact exist as to, *inter alia*, whether Defendants violated the ADA by failing to provide Ms. Brock with adequate observation and monitoring.

The Court notes that Plaintiff purports to bring her ADA claim pursuant to 42 U.S.C. §

1983.  Specifically, Plaintiff's amended complaint states that she instituted this suit "under and by virtue of [section] 1983 for deprivations of rights, privileges, and immunities secured by the Constitution and laws of the United States, the [ACRA], and the [ADA]."  (ECF No. 13, p. 2). Plaintiff's amended complaint also states that Defendants' deliberate indifference to Ms. Brock's medical conditions violated her rights under the ADA.  (ECF No. 13, p. 7).  Because Plaintiff has asserted her ADA claim under section 1983, her ADA claim necessarily fails at the onset.

It is well recognized that a plaintiff may use section 1983 to enforce not only rights contained in the Constitution, but also rights that are defined by federal statutes.  *See Maine v. Thiboutot*, 448 U.S. 1, 4-8 (1980); *Ark. Med. Soc'y, Inc. v. Reynolds*, 6 F.3d 519, 523 (8th Cir. 1993).  However, an exception to this general rule exists when a comprehensive remedial scheme evidences a congressional intent to foreclose resort to section 1983 for remedy of statutory violations.  *See Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19-21 (1981).  In such cases, "[c]ourts should presume that Congress intended that the enforcement mechanism provided in the statute be exclusive." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (citing *Pona v. Cecil Whittaker's, Inc.*, 155 F.3d 1034, 1038 (8th Cir. 1998), *cert. denied*, 526 U.S. 1131 (1999)).  Because Congress clearly intends the ADA's comprehensive remedial scheme to be the exclusive remedial apparatus for vindicating ADA violations, "an ADA violation is not actionable under [section] 1983."  *Pona*, 155 F.3d at 1038.

As discussed above, Plaintiff brings her ADA claim under section 1983.  However, ADA violations are not actionable under section 1983.  *Id.*  Accordingly, Defendants are entitled to summary judgment on Plaintiff's ADA claim because it is brought pursuant to section 1983.  *Id.* Moreover, even assuming *arguendo* that Plaintiff permissibly brought a separate ADA claim in this action, the Court nonetheless finds that the claim fails for the following reasons.

Defendants cite a 1997 opinion from the Eastern District of Arkansas stating that a prisoner may bring an ADA claim for a prison's failure to provide necessary medical devices or supplies. *See Herndon v. Johnson*, 970 F. Supp. 703, 706-08 (E.D. Ark. 1997) (denying a motion for judgment on the pleadings and holding that a prisoner may bring an ADA claim against a prison regarding prison officials' alleged refusal to provide necessary medical equipment). However, the Eighth Circuit subsequently held that an ADA claim cannot be based on medical treatment decisions. *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (per curiam). Courts in the Eighth Circuit have applied this rule in denying ADA claims brought by prisoners due to a prison official's medical treatment decisions. *See, e.g.*, *Moss v. Corizon, Inc.*, No. 2:13-cv-117-DPM-HDY, 2015 WL 403566, at *3 (E.D. Ark. Jan. 12, 2015), *aff'd as modified sub nom. Moss v. Corizon CMS*, 622 F. App'x 591 (8th Cir. 2015); *Anderson v. Hobbs*, No. 5:11-cv-0258-JLH-BD, 2013 WL 628344, at *6 (E.D. Ark. Jan. 29, 2013), *report and recommendation adopted*, No. 5:11-cv-0258-JLH/BD, 2013 WL 627245 (E.D. Ark. Feb. 20, 2013); *see also Moore v. Kohl*, No. 4:04-cv-3174, 2005 WL 2002084, at *1 (D. Neb. Aug. 16, 2005) ("[A] claim for negligent medical treatment for a disability is not actionable under the ADA."). Moreover, defendants cannot be sued under the ADA in their individual capacities. *Dinkins v. Corr. Med. Servs.*, 743 F.3d 633, 634 (8th Cir. 2014).

In this case, Plaintiff alleges that Defendants failed to adequately attend to Ms. Brock's medical needs, which, as discussed above, amounts to negligence or medical malpractice. Plaintiff does not allege that Defendants discriminated against Ms. Brock in any way due to her disability. Plaintiff also does not argue that Defendants failed to provide Ms. Brock with any additional necessary medical equipment other than the equipment that she was given.[8] Instead, Plaintiff's

---

[8] Although Plaintiff's supplemental brief contains a subsection arguing that Defendants failed to provide Ms. Brock with working medical machines, the accompanying discussion is one sentence, stating that West did not test Ms.

arguments focus primarily on the level of monitoring the UCDC provided Ms. Brock throughout her incarceration. Thus, Plaintiff appears to assert her ADA claim based on Defendants' medical treatment decisions regarding Ms. Brock during her incarceration in the UCDC, specifically regarding the level of monitoring given to her.[9] *See Moore*, 2005 WL 2002084, at *1. Moreover, Plaintiff asserts her ADA claim against Defendants in their individual capacities. Binding Eighth Circuit caselaw instructs that Plaintiff can do neither. Accordingly, the Court finds that Plaintiff's ADA claim fails, and that Defendants are entitled to summary judgment on the same.

### D. Failure to Train

Plaintiff asserts a failure-to-train claim against all Defendants. Defendants argue that they are entitled to summary judgment on this claim.

As an initial matter, the Court notes that it is unclear whether Plaintiff asserts her failure-to-train claim pursuant to section 1983 or as a state law negligence claim. Although a failure-to-train claim is cognizable under section 1983, Plaintiff's amended complaint lists her failure-to-train claim in a paragraph discussing Defendants' alleged negligent conduct. (ECF No. 13, p. 7). Plaintiff's response to the instant motion does not discuss or clarify her failure-to-train claim, so the remainder of this section will assume that Plaintiff brings her failure-to-train claim under section 1983.[10]

---

Brock's equipment to see if it worked before providing it to her in the UCDC. This, however, does not establish that Ms. Brock's equipment was indeed defective. Moreover, undisputed evidence in the record shows that, as part of the investigation into Ms. Brock's death, Sergeant Gilbert took her equipment to a medical equipment company, which determined that the equipment was all in working order. (ECF No. 26-9, p. 7).

[9] Because Plaintiff has produced no evidence that Defendants refused to provide Ms. Brock with necessary medical equipment, the Court finds that *Herndon* is inapposite and the parties' citation to and discussion of *Herndon* is unpersuasive.

[10] To the extent that Plaintiff intended only to assert the failure-to-train claim as a state law negligence claim, said claim will be addressed in the following section.

Defendants argue that they are entitled to summary judgment on Plaintiff's failure-to-train claim. Specifically, Defendants argue that Plaintiff has produced no evidence that Separate Defendants McGough, the Union County Sherriff at the time, and Mitcham, the administrator of the UCDC at the time, failed to train the UCDC employees or that they were even aware of the events at issue. Defendants also argue that Plaintiff has produced no evidence that the other Defendants were involved in or responsible for any training decision made during the events at issue.

For clarity's sake, the Court will first address Defendants' arguments related to Separate Defendants McGough and Mitcham. Then the Court will address Defendants' arguments related to Separate Defendants McVay, Briggs, and Roberts.

### 1. Separate Defendants McGough and Mitcham

Defendants argue that Separate Defendants McGough and Mitcham are entitled to summary judgment because Plaintiff has provided no evidence demonstrating that they failed to adequately train the UCDC staff at the time of the events at issue. To the contrary, Defendants argue that the uncontroverted evidence shows that each officer involved in the events at issue had received basic jail standards training.[11] Defendants also argue that there is no evidence showing that the UCDC's policies tacitly authorized any impermissible neglect of a serious medical need of any person incarcerated in the UCDC.

Plaintiff does not respond directly to Defendants' arguments. Plaintiff does, however, allude to the proposition that West, the only nurse employed at the UCDC, was not present at the jail on the night Ms. Brock died and that the only guards present were not trained to provide medical monitoring or care to the inmates. The Court will construe this as responsive to

---

[11] Defendants do not, however, cite to evidence in the record demonstrating this assertion.

Defendants' arguments.

A supervisor may be held individually liable under section 1983 if he fails to train or supervise the subordinate who caused the violation. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). However, a supervisor cannot be liable under section 1983 for failure to train if the plaintiff cannot establish an underlying constitutional violation. *Id.* The Court has determined above that Plaintiff's deliberate indifference and ADA claims under section 1983 fail. Therefore, the Court finds that Plaintiff's section 1983 failure-to-train claim necessarily fails because Plaintiff has not established an underlying constitutional violation caused by Separate Defendants McGough and Mitcham's alleged failure to train their subordinates. *Id.* Accordingly, the Court finds that Separate Defendants McGough and Mitcham are entitled to summary judgment on this claim.

### 2. Separate Defendants McVay, Briggs, and Roberts

Defendants argue that Separate Defendants McVay, Briggs, and Roberts are entitled to summary judgment on Plaintiff's failure-to-train claim because Plaintiff has provided no evidence that they were involved in or responsible for the training of UCDC staff during the events in question. Plaintiff does not respond to this argument.

Liability under section 1983 requires "a causal link to, and direct responsibility of, the deprivation of rights. To establish personal liability of . . . supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [their] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (alteration in original). "[A] . . . general responsibility for supervising the operations of a prison is insufficient to establish personal involvement." *Id.*

To the extent that Plaintiff asserts a failure-to-train claim against Separate Defendants

Briggs and McVay, the Court finds that those claims fail. Plaintiff has not alleged or provided any evidence demonstrating that Separate Defendants Briggs and McVay were employed by the UCDC in supervisory roles or that they had any personal involvement in, responsibility for, or authority to train employees at the UCDC during the events at issue. Accordingly, Separate Defendants Briggs and McVay are entitled to summary judgment on this claim.

Plaintiff's failure-to-train claim also fails as to Separate Defendant Roberts. Although he is currently the Union County Sheriff, he was not employed in that position during the events at issue. Plaintiff has not alleged or provided any evidence demonstrating that Separate Defendant Roberts was employed by the UCDC in a supervisory role or that he had any personal involvement in, responsibility for, or authority to train employees at the UCDC during the events at issue. Accordingly, Separate Defendant Roberts is entitled to summary judgment on this claim.

**E. State Law Claims**

Plaintiff asserts an ACRA claim and a negligence claim against Defendants.[12] Defendants argue that, if the Court dismisses Plaintiff's federal claims, the Court should also decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff does not respond to this argument.

A district court may decline to exercise supplemental jurisdiction over state claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). In the Eighth Circuit, the preference is for a court to decline to exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed before trial. *See Johnson v. City of Shorewood, Minn.*, 360 F.3d 810, 819 (8th Cir. 2004).

---

[12] As referenced above, it is also possible that Plaintiff asserts her failure-to-train claim as a state law negligence claim.

Because the Court has dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the Court finds that Plaintiff's state law claims should be dismissed without prejudice.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 25) should be and hereby is **GRANTED** as to Plaintiff's federal claims. Plaintiff's official capacity claims against all Defendants are hereby **DISMISSED WITH PREJDUICE**. Plaintiff's individual capacity claims against all Defendants relating to 42 U.S.C. 1983 and the ADA are also **DISMISSED WITH PREJUDICE**. To the extent that Plaintiff asserts her failure-to-train claim against all Defendants pursuant to 42 U.S.C. 1983, that claim is **DISMISSED WITH PREJUDICE** as well. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state claims, and those claims are **DISMISSED WITHOUT PREJUDICE**. A separate Judgment consistent with this Opinion will be entered.

**IT IS SO ORDERED**, this 27th day of September, 2018.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge